UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE MASTROMATTEO, | No.  2:25-cv-00267-CKD |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1973, applied for DIB and SSI in 2022, alleging disability beginning September 1, 2020.  Administrative Transcript ("AT") 17, 29.  The alleged onset date was later amended to February 13, 2021.  AT 19.  Plaintiff stated that she was unable to work due to degenerative disc disease in upper back, bursitis in left shoulder, severe lower back pain, and

1

seizures.  AT 79.  On April 17, 2024, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled between February 13, 2021, and the date of the decision.  AT 17-30. The ALJ made the following findings (citations to 20 C.F.R. omitted):

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2.  The claimant has not engaged in substantial gainful activity since February 13, 2021, the amended alleged onset date.

3.  The claimant has the following severe impairments: seizure disorder, post-traumatic stress disorder (PTSD), and history of alcohol use disorder with mild neurocognitive deficits.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the claimant has had the residual functional capacity to perform light work except that she can occasionally perform postural activities but never climb ladders, ropes, or scaffolds; she cannot work around unprotected heights and must be afforded other seizure precautions; she is limited to simple tasks in a routine environment; she can occasionally interact with coworkers but never interact with the public; and she is precluded from fast-paced work such as rapid assembly or conveyor belt work.

6.  The claimant is unable to perform past relevant work.

7.  The claimant was born [in 1973] and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advancing age.

8.  The claimant has at least a high-school education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2021, through the date of this decision.

AT 19-30.

////

2

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting plaintiff's subjective symptom testimony; and (2) the ALJ erred in evaluating the medical opinions.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

////

3

ANALYSIS

A.  Subjective Symptom Testimony

Plaintiff claims the ALJ erred in evaluating her subjective testimony and self-described limitations.  Plaintiff argues that the ALJ's findings as to credibility are "very minimal" and conclusory, providing so little analysis as to permit meaningful judicial review.  Plaintiff further argues that the ALJ's assessment of her daily activities is flawed, as her activities are "sporadic" and do not show that she can perform work on a regular and continuing basis.

1.  Plaintiff's Testimony

The ALJ summarized plaintiff's testimony and allegations as follows:

> The claimant alleges disability due to impairments including seizures and PTSD.  She said that she experiences panic attacks and fear of being in public.  The panic attacks can cause seizures, which happen about two or three times a month.  After these episodes she needs to recover for two days due to exhaustion and pain.  She said she has difficulty lifting, kneeling, and stooping.  She further stated that she is a recovering alcoholic with a learning disability and poor memory and concentration.  Due to her impairments, she said, she is unable to leave the house at all ten days per month.

AT 23; see AT 42-70 (hearing testimony).

2.  Legal Standard

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication,

4

treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78.  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]"  Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment— is not enough to satisfy the minimal requirements for assessing credibility.  Id. at 1277–78.

3.  Discussion

The ALJ found objective medical evidence of impairment, concluding that plaintiff had multiple severe impairments: seizure disorder, PTSD, and history of alcohol use disorder with mild neurocognitive deficits.  AT 20.  The ALJ found plaintiff to have mild or moderate mental limitations in the four assessed categories of mental functioning.  AT 21-22.

However, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained [below]."  AT 23.

"With respect to the claimant's seizure disorder," the ALJ wrote, "the overall medical record demonstrates that she has experienced episodes at varying frequency, but often in the setting of treatment noncompliance."  AT 23.  The ALJ noted that, after consulting with a neurologist in

5

2021 about past seizures (three in her lifetime), she was prescribed medication and told to follow up in four weeks, but she did not return for another year.  AT 23.  The ALJ noted that, in April and May 2022, plaintiff provided inconsistent information about when she stopped taking her seizure medication, stating at one point that she had not taken it for months.  AT 24.  The ALJ also noted that, in 2022, plaintiff was taking less than the prescribed dose of seizure medication and did not seek follow-up treatment for over a year.  AT 24.  The ALJ cited a November 2023 medical note that plaintiff's seizures were related to inconsistent medication use.  AT 24.  The ALJ concluded that plaintiff's "failure to follow up and adhere to the medication regimen determined by her neurologist tends to suggest that her symptoms were not as debilitating as alleged."  AT 25.  Failure to follow a prescribed course of treatment is a proper consideration in the credibility analysis.

Prior inconsistent statements are also a valid consideration in determining credibility. The ALJ noted that, in 2023, plaintiff "provided conflicting statements to consultative examiners" about the frequency of her seizures.  AT 24.  The ALJ concluded that "the medical record does not bear out such a significant frequency or intensity of seizures as to preclude employment."  AT 25.

Turning to mental impairment, the ALJ noted that plaintiff had "received routine and conservative care" consisting of medication prescribed by her primary doctor.  "She did not seek out or receive any specialized mental health treatment until, purportedly, the day after the hearing."  AT 25; see AT 62 (hearing testimony that plaintiff had not sought treatment for anxiety or mental issues, but planned to meet with a psychiatrist the next day).  From this evidence, the ALJ reasoned that plaintiff's "mental health symptoms were apparently not significant enough that she felt the need to reach out for treatment during the relevant period. . . . [M]ental status examinations did not note any concerning findings [record citations omitted].  Furthermore, she did not report frequent panic attacks, an inability to leave the house, or fear of being in public."  AT 25.  Plaintiff does not dispute these findings, which are valid considerations in the credibility analysis.

Finally, the ALJ found that plaintiff's "activities of daily living suggest a capacity for a range

6

of simple tasks[.]"  AT 26.

> The claimant takes care of her mother, who is not in good health, doing cooking and cleaning.  She makes candles, plays video games, does puzzles, and reads self-help and history books.  She attends Alcoholics Anonymous meetings and church, and initially reported riding the city bus though she testified she had not taken it in about a month due to anxiety.  The claimant also volunteers at a food bank performing tasks on a computer.

AT 26 (record citations omitted).  Consistent with this finding, the ALJ limited plaintiff to "simple tasks in a routine environment" in the RFC.  Plaintiff argues that these activities do not account for her episodic seizures and mental impairments.  But as discussed above, the ALJ concluded that plaintiff's seizures and mental impairments were not as limiting as she alleged.  Plaintiff's ability to perform a variety of personal and social activities, despite her allegations of disabling symptoms, is a proper consideration in evaluating credibility.  See Ahearn v. Saul, 988 F.3d 1111, 1117 (9th Cir. 2021) (claimant's ability to use public transportation, shop, perform personal care, prepare meals, and perform household chores was properly found inconsistent with claim of disabling mental impairments).

The ALJ's stated reasons for his credibility finding were specific enough to allow for meaningful review.  Plaintiff advocates for an alternative interpretation of the evidence but does not show the ALJ's interpretation is unreasonable.  Because the ALJ used the proper process and provided proper reasons, the court defers to his discretion on the issue of credibility.

B.  Medical Opinions

Plaintiff claims the ALJ erred in evaluating multiple medical opinions in the record.  Plaintiff asserts that the ALJ's assessments of these opinions were not specific enough or supported by substantial evidence.

1.  Legal Standard

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally

7

ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements.  20 C.F.R. § 416.920c(c)(1)-(5).  The most important of these factors are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations.  20 C.F.R. § 416.920c(c)(1).  Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves.  20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).  The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b).  The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court."  Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

2.  Dr. Bowerman

In June 2023, Sara Bowerman, Ph.D., performed a consultative psychological examination of plaintiff.  AT 26; see AT 1939-1949.  The ALJ summarized Dr. Bowerman's findings of functional mental limitations, ranging from mild to moderate to marked.  AT 26.  Dr. Bowerman found in relevant part that plaintiff was "moderately to markedly limited in the ability to maintain concentration and attention and to pace, track and scan[.]"  AT 26; see AT 1948.

Assessing this opinion, the ALJ wrote:

> Dr. Bowerman's opinions were somewhat supported by her examination, during which she observed the claimant's memory to be moderately impaired based on testing and her attention and

8

> concentration were mildly to moderately impaired.  On [adult intelligence] testing, the claimant scored in the low average range, but on [memory testing], she scored in the borderline range in immediate memory and the extremely low range in delayed memory and visual memory.  Dr. Bowerman offered an interpretation of these scores, stating that they indicate the claimant has difficulty remembering and conducting simple tasks. . . .

> However, the record as a whole does not document any significant memory deficits, nor any significant, ongoing mental status findings in general [record citations], despite the lack of any specialized treatment.  Furthermore, Dr. Bowerman herself noted that the claimant displayed good concentration and task persistence on testing, as well as a logical thought process, <u>which does not support a moderate to marked limitation in maintaining attention and concentration.</u>  Accordingly, the undersigned is not entirely persuaded by Dr. Bowerman's findings.

AT 26-27 (emphasis added).

Plaintiff asserts that "the ALJ did not explicitly state whether he found Dr. Bowerman's opinion persuasive[.]"  However, the ALJ took issue with only one aspect of Dr. Bowerman's opinion: her finding that plaintiff had moderate to marked limitations in maintaining attention and concentration.  The ALJ explained his reasons for failing to credit this finding, discussing the key factors of supportability (Dr. Bowerman's supporting explanation) and consistency (comparison with other evidence in the record).  The ALJ's reasoning was sufficiently specific to permit meaningful judicial review, and plaintiff does not point to, nor does the court find, any error in the ALJ's treatment of this opinion.

### 3.  Dr. Rafferty

In December 2023, Trevor Rafferty, M.D. completed a four-page medical source statement stating that he treated plaintiff for "psychogenic non-epileptic seizures or functional neurological disorder."  AT 2224.  Dr. Rafferty opined that plaintiff had multiple marked mental limitations and would have episodes of decompensation in a work setting three or more times per month.  AT 2224-2227.  The ALJ partially credited Dr. Rafferty's opinion, writing in part:

> Dr. Rafferty first examined the claimant in December 2023[1] and predicted that these limitations pertained to a six-month period, i.e., not the 12-month period required for consideration of functional

---

[1] Dr. Rafferty began treating plaintiff on December 11, 2023 but opined that she had multiple marked limitations dating back to 2018.  AT 2226.

9

limitations. Furthermore, the neuropsychiatric evaluation ordered by Dr. Rafferty reflected a normal mental status, unsupportive of marked functional limitations.[2] While the claimant's seizure disorder has been attributed to untreated psychiatric conditions, the overall mental findings of record and lack of treatment are inconsistent with such significant limitations. The undersigned is persuaded, however, that the claimant should avoid strenuous activity, insofar as that suggests more than light work, to prevent exacerbation of her seizures.

AT 28 (some record citations omitted).

Plaintiff asserts that "[t]he ALJ did not make a persuasiveness finding regarding Dr. Rafferty's opinion." While the ALJ did not use the word "persuasive," he sufficiently explained why he gave the opinion little weight (i.e., the opined limitations did not meet the 12-month requirement, plaintiff's corresponding mental status exam was normal, and the opinion was inconsistent with the "overall mental findings of record and lack of treatment") except for a limitation to light work. The ALJ also articulated how he considered the factors of supportability and consistency with reference to evidence in the record. Plaintiff has not shown error as to this opinion.

### 4. Other Medical Opinions

Plaintiff claims that the ALJ erred in evaluating two other medical opinions in the record.

In her April 2022 medical source statement, nurse Cori Crow opined that plaintiff had moderate and marked mental limitations, various functional physical limitations, would have multiple monthly episodes of decompensation, and would require daily unscheduled breaks of up to 45 minutes. AT 27, citing AT 2229-2231. The ALJ discounted this opinion, writing that it was

not supported by Nurse Crow's own notes, in which she did not document any mental status findings . . . nor any significant ongoing physical findings. [Record citations.] Additionally, as described above, the overall record does not document such frequent seizures or mental health symptoms so severe as to seek treatment. [Record citations.] Accordingly, the undersigned is not persuaded by this Medical Source Statement.

AT 27.

Plaintiff's basis for challenging the ALJ's assessment of Nurse Crow's opinion is not

---

[2] See AT 2292-2301 (December 2023 evaluation showing normal mental status exam results).

clear. Notably, she does not dispute that the ALJ considered the factors of supportability and consistency, supported by substantial evidence. Having reviewed the ALJ's evaluation of this opinion, the court finds no error.

In July 2023, State agency psychiatric consultant S. Nair, M.D. found that plaintiff was capable of simple and detailed tasks. AT 135; see AT 132-137. The ALJ concluded that Dr. Nair's findings were "somewhat consistent with the overall record" but gave "some deference to Dr. Bowerman's examination in finding that the claimant is limited to only simple tasks[.]" AT 27. The ALJ added that plaintiff's "activities of daily living reflect that she carries out a variety of tasks on a daily basis, including caring for her mother, managing finances, reading, and volunteering for a food bank, supporting a capacity for simple tasks." AT 27.

In sum, the ALJ found Dr. Nair's opinion partially persuasive but found plaintiff more mentally limited than Dr. Nair opined. Plaintiff's basis for challenging the ALJ's assessment of Dr. Nair's opinion is not clear. As above, she does not dispute that the ALJ considered the factors of supportability and consistency, supported by substantial evidence. Having reviewed the ALJ's evaluation of this opinion, the court finds no error. Defendant is entitled to summary judgment on all claims.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3. Judgment is entered for the Commissioner.

Dated: March 11, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/mast0257.bothdibssi.ckd

11